**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CORNELIUS WILLIAMS, | ) | CASE NO. 1:11-cv-2141 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

Plaintiff, Cornelius Williams ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I.   PROCEDURAL HISTORY

On July 2, 2007, Plaintiff protectively filed an application for SSI and alleged a disability onset date of January 2, 2004.  (Tr. 11.)  The application was denied initially and upon reconsideration, so Plaintiff requested a hearing before an administrative law judge ("ALJ").  (Tr. 11.)  On June 15, 2010, an ALJ held Plaintiff's hearing by video conference.  (Tr. 11.)  Plaintiff participated in the hearing, was represented by counsel, and testified.  (Tr. 11.)  A vocational expert ("VE") also participated and testified.  (Tr. 11.)  On June 25, 2010, the ALJ found Plaintiff not disabled.  (Tr. 19.)  On August 8, 2011, the Appeals Council declined to review the ALJ's decision, so the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On October 11, 2011, Plaintiff filed his complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  On March 22, 2012, Plaintiff filed his Brief on the Merits.  (Doc. No. 12.)  On May 21, 2012, the Commissioner filed his Brief on the Merits.  (Doc. No. 17.)  Plaintiff did not file a reply brief.

Plaintiff essentially argues that the Commissioner's final decision is not supported by substantial evidence because the ALJ's hypothetical question to the VE does not accurately portray Plaintiff's limitations.

## II.   EVIDENCE

### A.   Personal and Vocational Evidence

Plaintiff was 38 years old on the date he filed his application.  (Tr. 18.)  He had a limited education and was able to communicate in English.  (Tr. 18.)  He had past relevant work experience as a "cook" and "prep cook."  (Tr. 18.)

2

**B.	Relevant Medical Evidence**

**1.	Physical Condition**

On September 2, 2007, Plaintiff presented to the hospital emergency department and complained that his knee "gave out" and caused him to fall on his right knee and arm.  (Tr. 255.)  Dr. Aashish Patel, M.D., attended to Plaintiff and indicated that Plaintiff reported he suffered moderate pain in his right knee, and that both of his knees had been weak since he underwent surgery bilaterally.  (Tr. 255.)  Dr. Patel diagnosed Plaintiff with "acute right knee effusion/strain . . .  with likely patellar tendon injury"; gave Plaintiff a "knee immobilizer"; gave Plaintiff a walker "due to knees giving out"; and discharged Plaintiff with instructions to follow up in one week.  (Tr. 256.)

On October 15, 2007, Plaintiff presented to Dr. Steven B. Jackson[1] with complaints of right knee pain and a ruptured right patellar tendon.  (Tr. 246.)  Dr. Jackson indicated that Plaintiff reported he had been scheduled for surgery on his knee on September 12, 2007; he had not been able to appear for the surgery; and he wanted to reschedule the surgery.  (Tr. 246.)

On October 24, 2007, Plaintiff underwent surgery with Dr. Brendan M. Patterson, M.D.  (Tr. 242-45.)  Dr. Patterson indicated that there were no complications during surgery; Plaintiff was stable at the end of surgery; and Plaintiff was discharged with pain medication and a knee immobilizer.  (Tr. 244.)

On October 26, 2007, Plaintiff returned to the emergency department with complaints of knee pain.  (Tr. 240.)  Registered nurse Virginia Serowski attended to

---

[1] The record does not clearly indicate Dr. Jackson's credentials.

3

Plaintiff and indicated that Plaintiff reported his pain had not increase after surgery, but persisted. (*See* Tr. 240.) Ms. Serowski concluded the pain was "post op pain"; gave Plaintiff three-days-worth of Oxycontin; strictly discouraged Plaintiff from overusing Percocet; and instructed Plaintiff not to drive, climb heights, operate machinery, or take Tylenol within six hours of using an oral narcotic. (Tr. 239.)

On December 14, 2007, state agency consultative physician Nick Albert, M.D., reviewed Plaintiff's medical records and assessed Plaintiff's physical residual functional capacity ("RFC") as follows. (Tr. 312-19.) Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; and sit, stand, and walk for about 6 hours in an 8-hour workday with normal breaks. (Tr. 313.) His abilities to push and pull were unlimited except to the extent that he was limited in his abilities to lift and carry. (Tr. 313.) He could only occasionally kneel and crawl. (Tr. 314.) He had no manipulative, visual, communicative, or environmental limitations. (Tr. 315-16.)

On December 17, 2007, Plaintiff presented to Dr. Damien G. Billow[2] with continued complaints of knee pain. (Tr. 284.) Dr. Billow indicated that Plaintiff should work on his range of motion with a "Bledsoe Brace" and physical therapy, undergo pain management, and follow up in three weeks. (Tr. 284.)

On April 24, 2008, Plaintiff underwent a consultative examination with Dr. Franklin D. Krause, M.D., upon referral from the Bureau of Disability Determination. (Tr. 332-33.) Dr. Krause indicated that Plaintiff presented with a cane in his right hand, and that Plaintiff reported the following. (Tr. 332.) Plaintiff used the cane "for insurance

---

[2] The record does not clearly indicate Dr. Billow's credentials.

purposes rather than for support." (Tr. 332.) Without the cane, he could stand and walk for 30 minutes. (Tr. 332.) He used over-the-counter medication and "what ever other medicine he can get for pain." (Tr. 332.) Upon examination, Dr. Krause further indicated that Plaintiff appeared to have a valgus deformity[3] of both knees as he walked, but that his gait appeared stable. (Tr. 333.) Dr. Krause concluded that Plaintiff "can stand and walk without ambulatory aids." (Tr. 333.)

On May 26, 2008, state agency consultative physician Paul Morton, M.D., affirmed Dr. Albert's findings. (Tr. 339.)

### 2. Mental Condition

On December 7, 2007, Plaintiff underwent a consultative psychological evaluation with Dr. J. Joseph Konieczny, Ph.D., upon referral from the Bureau of Disability Determination. (Tr. 301-04.) After reviewing Plaintiff's medical history and examining Plaintiff, Dr. Konieczny diagnosed Plaintiff with a depressive disorder not otherwise specified and assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 54.[4] (Tr. 303.) Dr. Konieczny further indicated the following. Plaintiff's abilities to concentrate and attend to tasks, understand and follow directions, and be aware of rules and social judgment and conformity appeared "adequate." (Tr. 304.) His ability to

---

[3] "Valgus" means "bent or twisted outward" and "denot[es] a deformity in which the angulation of the part is away from the midline of the body." Dorland's Illustrated Medical Dictionary 2003 (30th ed. 2003).

[4] A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers. *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. rev., 2000).

relate to others and deal with the general public appeared mildly to moderately impaired. (Tr. 304.) His ability to withstand stress and pressure appeared moderately impaired. (Tr. 304.) He appeared to require assistance in physically strenuous daily activities; and he appeared to require some degree of supervision and monitoring in the management of his other daily activities. (Tr. 304.)

On December 12, 2007, state agency consultative psychologist Mel Zwissler, Ph.D., performed a Psychiatric Review Technique and assessed Plaintiff's mental RFC. (Tr. 212-23, 308-10.) Dr. Zwissler indicated the following in the Psychiatric Review Technique. Dr. Zwissler assessed Plaintiff under Listing 12.04 regarding affective disorders and found that Plaintiff suffered a depressive disorder not otherwise specified. (Tr. 212, 215.) Plaintiff had moderate difficulties maintaining concentration, persistence, or pace; mild difficulties maintaining social functioning; mild restrictions in activities of daily living; and no episodes of decompensation of extended duration. (Tr. 222.)

Dr. Zwissler indicated the following regarding Plaintiff's mental RFC. Plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting. (Tr. 309.) He was not significantly limited in his abilities to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an

6

unreasonable number and length of rest periods; interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and set realistic goals or make plans independently of others.  (Tr. 308-09.)  There was no evidence of limitation in any other areas of functioning.  (Tr. 308-09.)  Dr. Zwissler concluded that Plaintiff "would do best in a low stress environment with minimal work related changes." (Tr. 310.)

On May 7, 2008, state agency consultative psychologist Kristen Haskins, Psy.D., affirmed Dr. Zwissler's findings but clarified that Plaintiff "would be limited to a static environment where changes can be explained and do not often occur."  (Tr. 338.)

**C.     Hearing Testimony**

### 1.     Plaintiff's Hearing Testimony

Plaintiff testified at his hearing as follows.  Plaintiff's knees continued to "bother" him.  (Tr. 35.)  He had a wire placed in his left knee and screws placed in his right knee, and he had undergone therapy.  (Tr. 35.)  He also had received cortisone injections. (Tr. 36-37.)  He left his prior jobs as a prep cook because those jobs "involve[d] a lot of standing" and he had problems with his knees.  (Tr. 39.)  His doctors told him that he had arthritis in his knees; and although he had not received treatment for it, he was scheduled for an appointment regarding it.  (Tr. 35.)  He also had difficulty reading because he had a learning disability; and his attorney noted that he had "some issues

7

with depression" and "some vision problems with glaucoma." (Tr. 40.)

### 2. Vocational Expert's Testimony

The ALJ posed the following hypothetical to the VE:

> I'd like you to assume a person at age 41 with an 11th-grade education, further assume a person capable of a limited range of light work limited in these ways. The position should never require . . . industrial climbing, that is ropes, ladders and scaffolds, should never require balancing or kneeling, crouching or crawling, but could occasionally require other climbing or stooping. . . . The position also should not require exposure to vibration or hazardous machinery or heights and involve simple and repetitive tasks and instructions.

(Tr. 46.) The VE testified that such a person could perform other light work as a production assembler (for which there were over 280,000 jobs in the national economy), and inspector/tester/examiner (for which there were over 400,000 jobs in the national economy).

Plaintiff's attorney asked the VE whether his response would change if the hypothetical person additionally were limited to standing only occasionally because of knee pain and weakness; required minimal reading with only large print and simple words; required a standard work environment where changes did not occur often and could be explained; required a low-stress work environment with minimal work-related changes; or had less than full use of his left arm. (Tr. 49-50.) The VE responded that his testimony would not change. (Tr. 49-50.) The VE stated that his testimony would change, however, if the hypothetical person were limited to no production quotas.[5] (Tr. 50.)

---

[5] Plaintiff's counsel did not ask how the VE's testimony would change; and the VE explained only that "there is a production rate that's separated from being competitive as opposed to sheltered." (Tr. 50.)

8

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and*

9

416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since July 2, 2007, the application date.

2. The claimant has the following severe impairments: osteoarthritis, glaucoma, reading disorder, and depressive disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work . . . except no climbing ropes, ladders, or scaffolds, balancing, kneeling, crouching, crawling; no more than occasional other climbing or stooping; no exposure to vibration or hazards including machinery and heights; and only simple, repetitive tasks and instructions.

5. The claimant is unable to perform any past relevant work.

. . . . .

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 2, 2007, the date the application was filed.

(Tr. 13-19.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. The ALJ's Hypothetical to the VE

11

The ALJ relied on the VE's testimony to conclude that Plaintiff could perform a significant number of jobs in the national economy.  A VE's testimony may constitute substantial evidence that a claimant is able to perform other work in the national economy when the testimony is offered in response to a hypothetical question that accurately portrays the claimant's physical and mental impairments and limitations. *See* Workman v. Comm'r of Soc. Sec., 105 F. App'x 794, 799 (6th Cir. 2004) (quoting Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987)).  Plaintiff contends that the ALJ's hypothetical to the VE did not accurately portray Plaintiff's impairments and limitations because it did not include a need for a cane to ambulate.

However, "[h]ypothetical questions posed to the expert witness need only enumerate those physical and mental impairments . . . which the ALJ finds supported by the medical evidence in the record." Miller v. Sec'y of Health & Human Servs., 895 F. 2d 1414 (Table), 1990 WL 10695, at *2 (6th Cir. 1990) (citing Meredith v. Bowen, 833 F.2d 650, 654 (7th Cir.1987)).  In his RFC assessment, the ALJ explained that Dr. Krause concluded Plaintiff did not need an ambulatory device to stand or walk (Tr. 16), and that Plaintiff's complaints regarding the extent to which his knee problems limited him were in close proximity to his injuries and surgeries (Tr. 17).  Indeed, Dr. Krause reported that Plaintiff admitted he used his cane for insurance purposes rather than for support.  The evidence reasonably supports the ALJ's conclusion that Plaintiff did not require a cane to ambulate; accordingly, the ALJ was not required to include such a limitation in his hypothetical to the VE.

Plaintiff further asserts that, although Dr. Krause found Plaintiff moderately

12

limited in his ability to withstand stress and pressure, the ALJ's hypothetical "contains no limitation on the stress and pressure of the workplace[] and does not limit time or production quotas or responsibility for directing others, the safety of others, or participating in negotiations or confrontation."  (Pl.'s Br. 9.)  However, the ALJ limited the hypothetical person to simple and repetitive tasks and instructions, and Plaintiff fails to explain how this limitation is inadequate to account for his nonexertional limitations. Any error in failing to include a more specific limitation related to stress would be harmless, as the VE testified that the hypothetical person would not be precluded from performing the work to which he testified if the person were limited to a low-stress work environment with minimal work-related changes.

Finally, Plaintiff offers no legal or factual explanation for why the ALJ's hypothetical should have included explicit additional limitations on time and production quotas, responsibility for directing others, responsibility for the safety of others, and participating in negotiations or confrontation; accordingly, such arguments are waived. See *Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir.2006) ("It is well-established that 'issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir.1997)); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[C]ourts have correlated review of ordinary administrative proceedings to appellate review of civil cases. . . .  Consequently, the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

13

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date:  August 14, 2012